UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRYKER SALES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ZIMMER BIOMET, INC.; ZIMMER BIOMET CMF AND THORACIC, LLC, d/b/a BIOMET MICROFIXATION LLC; and TRAGUS SURGICAL, INC.,<br><br>Defendants. | No. 1:16-cv-01670-DAD-EPG<br><br>ORDER GRANTING IN PART DEFENDANT TRAGUS SURGICAL, INC.'S MOTION TO DISMISS; AND DENYING PLAINTIFF'S MOTION TO STAY AND MOTION TO CONTINUE HEARING<br><br>(Doc. Nos. 29, 33, 47) |

This matter is before the court on three motions: defendant Tragus Surgical, Inc.'s motion to dismiss plaintiff's complaint (Doc. No. 29); plaintiff Stryker Sales Corporation's motion to stay proceedings pending resolution of issues in a related case (Doc. No. 33); and plaintiff's motion to continue the hearing on defendant's motion to dismiss (Doc. No. 47). A hearing on these motions was held on December 20, 2016. Attorney Robert Brian Milligan appeared on behalf of plaintiff Stryker Sales Corporation ("Stryker"). Attorneys Tarifa B. Laddon and Mike Rogers appeared on behalf of defendants Zimmer Biomet Inc. and Zimmer Biomet CMF and Thoracic LLC d/b/a Biomet Microfixation, LLC (collectively "Biomet"), and Tragus Surgical, Inc. ("Tragus"). Having considered the parties' briefs and oral arguments and for the reasons set forth below, the court will grant defendant's motion to dismiss in part, deny plaintiff's motion to

stay these proceedings, and deny plaintiff's motion to continue the hearing on defendant's motion to dismiss.

## BACKGROUND

Plaintiff Stryker commenced this action against defendants Biomet and Tragus on August 26, 2016, in the United States District Court for the Western District of Michigan. (Doc. No. 1.) According to the complaint, Stryker, a Michigan-based medical equipment manufacturer, hired Stephen Siroonian in 2012 as a sales representative for the "Fresno Territory," a geographic area within the Central Valley of California covering approximately six hospitals and medical centers, as well as fifteen craniomaxillofacial- and neuro-surgeons. (*Id.* ¶¶ 42, 45.)

In furtherance of that employment relationship, Mr. Siroonian and Stryker executed two agreements: the Stryker Confidentiality, Intellectual Property and Non-Solicitation Agreement (California Agreement); and the Stryker Confidentiality, Intellectual Property and Non-Solicitation Agreement (Standard Agreement) (collectively, the "Stryker Agreements"). (*Id.* ¶ 42, Exs. A–C.) The Stryker Agreements contain three notable contractual obligations owing to Stryker and its affiliated companies. First, pursuant to these agreements, Mr. Siroonian agreed not to "disclose, use, disseminate, identify by topic of subject, lecture upon or publish Confidential Information" he learned during his employment with Stryker, where the term "Confidential Information" is defined as "know-how, trade secrets, and technical, business and financial information and any other non-public information" (the "non-disclosure provision"). (*Id.* ¶¶ 48–49.) Second, Mr. Siroonian agreed that during the course of his employment with Stryker and for one year after termination, he would not solicit business from, contact, or sell any products or services to customers he had contact with during the last twenty-four months of his employment with Stryker (the "non-solicitation provision"). (*Id.* ¶ 51.) Third, Mr. Siroonian agreed not to compete with Stryker—by working as an employee, consultant, contractor, or agent for any competitor organization—during the course of his employment with Stryker and for one year after termination (the "non-competition provision"). (*Id.* ¶ 52.) The Stryker Agreements contained the following Michigan choice-of-law provision: "[T]he parties' performance hereunder and the relationship between them shall be governed by, construed and enforced in

accordance with the laws of the State of Michigan without regard to the conflict of law rules thereof." (*Id.* ¶ 54.)

Plaintiff's complaint alleges that in August 2015, while he was still employed by Stryker, Mr. Siroonian contacted one of Stryker's competitors, Tragus, regarding potential employment. Mr. Siroonian provided copies of the Stryker Agreements to defendants. (*Id.* ¶¶ 55–58.) In October 2015, while negotiating a contractor agreement with Tragus, Mr. Siroonian received several requests for information from one customer, Fresno Community Hospital, but ignored those requests and hid them from Stryker's leadership. (*Id.* ¶ 90.) On October 30, 2015, Mr. Siroonian resigned from Stryker and indicated to Stryker's Central Valley territorial manager that he would be working for Tragus and selling a competing line of Biomet medical products. (*Id.* ¶¶ 66–69.) Shortly thereafter, Mr. Siroonian, on defendants' behalf, met with the Stryker customers he previously worked with to encourage them to convert to Biomet products. (*See id.* ¶¶ 70–96.)

On November 10, 2015, Stryker filed a complaint against Mr. Siroonian and his company Core Surgical, Inc. in the Western District of Michigan. *See Stryker Sales Corp. v. Siroonian*, No. 1:15-cv-01161 (W.D. Mich.). Stryker's claims in the *Siroonian* action primarily concern Mr. Siroonian's alleged breach of the Stryker Agreements. (Doc. No. 33-1 at 2.) After obtaining discovery in that case, Stryker moved to amend its complaint to add Biomet and Tragus based on evidence which it claimed reflected that these companies were involved in Mr. Siroonian's scheme to erode Stryker's customer relationships. (*Id.*) The district court denied Stryker's motion to amend. (*Id.*)

Unable to proceed against Biomet and Tragus in the *Siroonian* action, Stryker subsequently commenced the instant action in the Western District of Michigan. Plaintiff Stryker's complaint here alleges three state law causes of action: (1) tortious interference with contract, (2) tortious interference with business relationships, and (3) unfair competition. (Doc. No. 1.) On September 19, 2016, defendants Biomet and Tragus filed motions to dismiss Stryker's complaint, or in the alternative, to transfer the case to the Eastern District of California. (Doc. Nos. 10–13.) On November 2, 2016, the district court granted the motions to transfer the

3

case to this court, without addressing the issues raised in the motions to dismiss. (Doc. No. 20.) Moreover, the district court in Michigan concluded that transfer of the case was appropriate without definitively holding whether venue was proper. (*Id.* at 1 ("[T]he Court finds that transfer of the case to the United States District Court for the Eastern District of California is appropriate under 28 U.S.C. § 1404(a), assuming venue is proper; or 28 U.S.C. § 1406, assuming it is not.").)

On November 16, 2016, after the case was transferred to this court, defendant Tragus again moved to dismiss the complaint for failure to state a claim. (Doc. No. 29.)[1] On December 6, 2016, plaintiff filed its opposition. (Doc. No. 44.) On December 13, 2016, Tragus filed a reply. (Doc. No. 48.) Separately, on November 22, 2016, plaintiff filed a motion to stay proceedings in this case pending the resolution of the *Siroonian* action in the Western District of Michigan. (Doc. No. 33.) On December 6, 2016, defendants filed their opposition. (Doc. No. 41.) On December 13, 2016, plaintiff filed a reply. (Doc. No. 46.) On the same day, plaintiff also filed a motion to continue the hearing on defendant Tragus's motion to dismiss pending the resolution of plaintiff's motion to stay. (Doc. No. 47.)

**DEFENDANT TRAGUS'S MOTION TO DISMISS**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the

/////

---

[1] Biomet filed its answer and has not joined in this motion. (*See* Doc. No. 26.)

4

allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

With respect to defendants' motion to dismiss now before this court, the parties present two primary disputes about the appropriate state law to be applied in this case. First, the parties dispute whether the causes of action alleged in the complaint are governed by Michigan or California law. Second, the parties disagree as to whether the Stryker Agreements are valid and enforceable under the applicable state law. Defendant Tragus contends that because the Stryker Agreements are invalid and unenforceable under California law, and because each of the alleged causes of action requires the existence and breach of a valid and enforceable contract, plaintiff cannot proceed on any of its causes of action.

**A.    The Appropriate State Substantive Law**

    1.    Choice of Law

Ordinarily, a federal court exercising diversity jurisdiction must apply the substantive law of the state in which the court sits, except in matters governed by the U.S. Constitution or federal statutes. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Supreme Court has identified an exception to that principle for cases transferred pursuant to 28 U.S.C. § 1404(a), requiring the transferee district court to apply the state law of the original transferor court. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. ___, ___, 134 S. Ct. 568, 582 (2013) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964)); *see also id.* ("We deemed that exception necessary to prevent 'defendants, properly subjected to suit in the transferor State,' from 'invok[ing] § 1404(a) to gain the benefits of the laws of another jurisdiction . . . .'" (quoting *Van Dusen*, 376 U.S. at 638)). This exception is inapplicable to cases transferred pursuant to 28 U.S.C. § 1406 because transfer was effectuated in part to cure a lack of personal jurisdiction. *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966–67 (9th Cir. 1993); *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983) ("In [§ 1406] cases, however, it is necessary to look to the law of the transferee state, also to prevent forum shopping, and to deny plaintiffs choice-of-law advantages to which they would not have been entitled in the proper forum.").

/////

Here, the parties dispute the appropriate state substantive law that governs plaintiff's causes of action. Tragus contends that California law applies here because the district court in Michigan transferred this case pursuant to § 1406, necessarily concluding that venue in Michigan was improper. (Doc. No. 29-1 at 3 n.2.) Unsurprisingly, Stryker argues the opposite—that Michigan substantive law must apply here because the case was transferred pursuant to § 1404(a). (Doc. No. 44 at 8–9.) Neither argument is convincing. As the district court quite clearly stated in its order transferring the case to this court, "transfer of the case . . . is appropriate under 28 U.S.C. § 1404(a), *assuming venue is proper*; or 28 U.S.C. § 1406, *assuming it is not*." (Doc. No. 20 at 1 (emphases added).) Thus, without having to conclude whether venue was proper, the district court held in the alternative that transfer was appropriate under one of the two statutory venue-transfer provisions. *See Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1147 (5th Cir. 1984) ("Sections 1404(a) and 1406(a) are . . . seemingly mutually exclusive."), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987). To determine the appropriate substantive state law to apply in this case, then, this court must independently ascertain whether venue was proper in the Western District of Michigan.

    2.  <u>Venue</u>

Venue for federal claims is proper in (1) the district in which any defendant resides, if all of the defendants reside in the same state; (2) the district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) a district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b). There is no meaningful dispute that the latter two grounds for venue in the Western District of Michigan do not apply to this case. In prior briefing regarding transfer of venue, none of the parties disputed that a substantial part of the events giving rise to plaintiff's causes of action occurred in California, outside of the Western District of Michigan. (*See* Doc. Nos. 10–13, 15, 19.) Moreover, the Michigan district court has already concluded that regardless of whether venue is proper in Michigan, this case may be properly brought before this court, in the Eastern District of

6

1    California. (*See* Doc. No. 20.) Accordingly, for venue to be proper in the Western District of
2    Michigan, all of the defendants must reside in Michigan, and at least one defendant must reside in
3    the Western District of Michigan. *See* 28 U.S.C. § 1391(b)(1). Here, as explained below,
4    defendant Tragus, a California corporation, cannot be said to "reside" in the Western District of
5    Michigan.

6    Under the venue statutes, a corporate defendant "shall be deemed to reside . . . in any
7    judicial district in which such defendant is subject to the court's personal jurisdiction with respect
8    to the civil action in question." 28 U.S.C. § 1391(c)(2). In determining whether the exercise of
9    personal jurisdiction over a nonresident defendant is proper, a district court must apply the law of
10   the state in which it sits. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.
11   1998); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). District
12   courts in Michigan may exercise personal jurisdiction over a nonresident defendant to the extent
13   permitted by the Due Process Clause of the Constitution. *See* Mich. Comp. Laws §§ 600.711,
14   600.715; *see also Theunissen v. Matthews*, 935 F.2d 1454, 1462 (6th Cir. 1991) ("[T]his Circuit
15   historically has understood Michigan to intend its long-arm statute to extend to the boundaries of
16   the fourteenth amendment."); *Green v. Wilson*, 455 Mich. 342, 350 (1997) ("The long-arm statute
17   is coextensive with due process insofar as the statute is limited by due process, and, therefore, the
18   statute and due process share the same outer boundary."). The plaintiff bears the burden of
19   establishing that jurisdiction exists. *Theunissen*, 935 F.2d at 1458.
20   Under Michigan's long-arm statute, personal jurisdiction may be founded on either general
21   jurisdiction or specific jurisdiction. To exercise general jurisdiction in Michigan, a court must
22   determine that a nonconsenting, nonresident corporation, such as Tragus, has carried on "a
23   continuous and systematic part of its general business" within Michigan. Mich. Comp. Laws
24   § 600.711(3). A court may exercise specific personal jurisdiction over a nonresident defendant if
25   (1) the defendant purposefully avails itself of the privilege of acting in the forum state or causing
26   a consequence in the forum state; (2) the plaintiff's causes of action arise out of the defendant's
27   forum-related activities of the defendant; and (3) the exercise of jurisdiction over the nonresident
28   /////

defendant is reasonable. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

In transferring the case to this court, the district court in Michigan explicitly rejected plaintiff's singular argument regarding the propriety of venue—that defendants here are bound by the forum selection provisions of the Stryker Agreements as "closely related parties" to Mr. Siroonian—but declined to undertake a complete analysis under § 1391(b). (*See* Doc Nos. 15 at 10–11; 20 at 5–6.) Having reviewed the record in this case, this court finds that the district court in the Western District of Michigan had no basis for exercising personal jurisdiction over defendant Tragus. In its original motion to dismiss or transfer, defendant Tragus submitted a sworn declaration from its president stating that Tragus has never had any business dealings, including sales, in the State of Michigan. (Doc. No. 11-1.) Moreover, plaintiff's causes of action in this case do not arise out of any alleged Michigan-related activity on the part of Tragus. Thus, because defendant Tragus does not "reside" in Michigan, venue for this action is improper in the Western District of Michigan, *see* 28 U.S.C. § 1391(b)(1),[2] and this court must apply the substantive law of California. *See Muldoon*, 1 F.3d at 967.

**B.     Plaintiff's Causes of Action Under California Law**

Defendant Tragus asserts that under California law, each of plaintiff's causes of action requires it to plead and prove that defendants breached valid contracts, namely the Stryker

/////

---

[2] In its opposition to defendants' motions to dismiss or transfer the case, plaintiff requested leave to conduct limited discovery to ascertain whether the Michigan court might have personal jurisdiction over defendant Tragus based on the closely related party doctrine. (*See* Doc. No. 15 at 6 n.4.) As previously noted, the district court found plaintiff's theory unpersuasive. (*See* Doc. No. 20 at 5.) Nonetheless, discovery should ordinarily be granted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988). Because Stryker has presented no non-speculative basis for the exercise of personal jurisdiction over Tragus, limited discovery is unwarranted here.

Agreements. This contention is not entirely accurate, and the court will briefly address the requirements for each cause of action below.

### 1. Intentional Interference with Contract

To state a claim of intentional interference with contract under California law, a plaintiff must plead the following elements: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)); *see also Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 774 (9th Cir. 2008).

In its complaint plaintiff alleges that Biomet and Tragus were aware of the Stryker Agreements and intentionally induced Mr. Siroonian to violate his contractual obligations to Stryker under various provisions of the Stryker Agreements—including the non-disclosure, non-solicitation, and non-competition provisions. (*See* Doc. No. 1 ¶¶ 108–16.) Thus, this cause of action depends in part on the validity and enforceability of those provisions.

### 2. Intentional Interference with Prospective Economic Advantage

To state a claim of intentional interference with prospective economic advantage, a plaintiff must allege "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (quoting *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521–22 (1996)); *see also Rock River Communications, Inc. v. Universal Music Group, Inc.,* 745 F.3d 343, 349 (9th Cir. 2014); *Buckaloo v. Johnson*, 14 Cal. 3d 815, 827 (1975). Also referred to as a claim for intentional interference with prospective business relationships, this tort is distinct from the tort of intentional interference with contract and does not depend on

the existence of a contract. *Korea Supply*, 29 Cal. 4th at 1157 (citing *Buckaloo*, 14 Cal. 3d 826–27); *see also Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392 (1995) ("Our courts should . . . firmly distinguish the two kinds of business contexts, bringing a greater solicitude to those relationships that have ripened into agreements, while recognizing that relationships short of that subsist in a zone where the rewards and risks of competition are dominant."). However, plaintiff must plead and prove that "defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself'"—i.e., that the conduct "is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply*, 29 Cal. 4th at 1153, 1159; *see also Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*, 138 Cal. App. 4th 1215, 1223 (2006) (concluding that "well-defined, established rules or standards of a trade, association or profession" may constitute a determinable legal standard).

Here, plaintiff Stryker alleges that defendants Biomet and Tragus were aware of and intentionally interfered with business relationships between Stryker and its then-existing customers—including obligations under a sole-sourcing agreement between Stryker and Fresno Community Hospital. (*See* Doc. No. 1 ¶¶ 117–31.) Specifically, the complaint alleges Mr. Siroonian intentionally failed to address issues raised by the hospital's surgeons and failed to respond to requests related to the sole-sourcing agreement. (*See id.* ¶¶ 15–16, 87–90, 119.) Unlike plaintiff's claim for intentional interference with contract, however, this cause of action does not depend on the validity of provisions of the Stryker Agreements. Rather, plaintiff's theory of liability as to this cause of action centers on defendants' allegedly wrongful interference with Stryker's business relationships through Mr. Siroonian's conduct. While such conduct may independently constitute a breach of the Stryker Agreements, plaintiff need not plead the validity or breach of those agreements to prevail. Accordingly, the court finds that plaintiff has sufficiently alleged facts to support a claim of intentional interference with prospective economic advantage.

/////

/////

### 3. Unfair Competition

To state a claim of unfair competition under California's Unfair Competition Law, California Business & Professions Code §§ 17200 et seq. ("UCL"), plaintiff must allege an act of unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. California courts recognize each of these three prongs as separate and distinct theories of liability. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). The UCL proscribes any unlawful business practice by covering "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech*, 20 Cal. 4th at 180 (citation and internal quotations omitted); *see also Cort v. St. Paul Fire & Marine Ins. Cos.*, 311 F.3d 979, 987 (9th Cir. 2002); *People ex rel. Gallegos v. Pac. Lumber Co.*, 158 Cal. App. 4th 950, 959 (2008). Alternatively, plaintiff may allege an unfair business practice, which must be "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech*, 20 Cal. 4th at 186–87.[3]

Plaintiff argues that its UCL cause of action is based on substantially the same underlying facts as those supporting its other causes of action. For example, plaintiff alleges that defendants engaged in unlawful or unfair conduct by (1) conspiring with Mr. Siroonian to sabotage business relationships with Stryker's then-existing customers; (2) encouraging and enticing Mr. Siroonian, while still employed with Stryker, to ignore requests from Stryker customers; and (3) inducing Mr. Siroonian to breach the Stryker Agreements. (*See* Doc. No. 1 ¶¶ 15–16, 87–90, 97, 125–31.) At least one of plaintiff's theories of liability under this cause of action depends on the validity of provisions of the Stryker Agreements.

/////

/////

/////

---

[3] Here, plaintiff does not appear to allege fraud under the UCL's third prong.

11

**C.     Enforceability of Non-Solicitation and Non-Competition Provisions, and California Rules Regarding Conflict of Laws**

Finding that plaintiff's causes of action for intentional interference with contract and unfair competition depend in part on the existence and breach of a valid and enforceable contract, the court next turns to whether particular provisions of the Stryker Agreements are valid and enforceable. Defendant Tragus argues that the terms of the Stryker Agreements must be interpreted under California law, despite a choice-of-law provision therein reflecting Stryker and Mr. Siroonian's intention to be bound by Michigan law. (*See* Doc. No. 1 ¶ 54.) Indeed, because plaintiff's causes of action proceed under California law, the court's determination of whether an element within those causes of action—namely whether a valid contract exists—necessarily must be analyzed under California law.

Just as this court must apply the substantive law of the forum state, so too must it apply California law governing conflicts of law to determine whether Michigan or California doctrine on non-competition agreements is appropriately applied here. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494 (1941); *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002); *Muldoon*, 1 F.3d at 967. In general, California courts apply a three-step "governmental interest" analysis where no effective choice-of-law provision exists:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state," *Bernhard v. Harrah's Club*, 16 Cal. 3d 313, 320 (1976), and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied." *Id.*

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107–08 (2006); *see also Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919–20 (2001) (noting that "[t]hese rules apply

/////

whether the dispute arises out of contract or tort, and a separate conflict of laws inquiry must be made with respect to each issue in the case").

However, an exception to this rule applies to cases involving contracts with choice-of-law provisions. Under those circumstances, California courts—adopting the principles set forth in section 187(2) of the Restatement (Second) of Conflicts of Laws—will apply the substantive law designated by the contract unless (a) the designated state has no substantial relationship to the parties or the transaction, or (b) application of the law of the designated state would be contrary to a fundamental policy of the forum state. *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 896 (1998) (citing *S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981)); *see also Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464–66 n.5 (1992) (reaffirming this approach). Under the exception enumerated in § 187(2)(b), where application of a choice-of-law provision would result in the contravention of California's public policy, the contract provision will be ignored to the extent necessary to preserve public policy. *See S. A. Empresa*, 641 F.2d at 749–50 (citing *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal. App. 3d 668, 673 (1971)); *see also Ruiz v. Affinity Logistics Corporation*, 667 F.3d 1318, 1323 (9th Cir. 2012).

Here, the parties do not dispute that Michigan has a substantial relationship to the contract parties and transactions at issue here, and that § 187(2)(a) is inapplicable. (*See* Doc. Nos. 44 at 12; 48 at 5.) Looking instead to § 187(2)(b), the court must, as a threshold matter, determine whether Michigan law is contrary to a *fundamental* policy of California.

> If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue . . . ." Restatement (Second) of Conflict of Laws § 187(2). If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

*Nedlloyd*, 3 Cal. 4th at 466. The "materially greater interest" test substantially overlaps with the "governmental interest" analysis described above where no choice-of-law provision is at issue. *See Application Grp.*, 61 Cal. App. 4th at 898. Accordingly, if a court determines that the

13

application of a choice-of-law provision is contrary to the fundamental policy of the forum state,

> a court can decline to enforce the parties' contractual choice-of-law provision only if the interests of the forum state are "materially greater" than those of the chosen state, *and* the forum state's interests would be more seriously impaired by enforcement of the parties' contractual choice-of-law provision than would the interests of the chosen state by application of the law of the forum state.

*Id.* at 898–99 (emphasis in original).

### 1. Whether Michigan Law Is Contrary to a Fundamental Policy in California

The parties agree that an apparent conflict exists between Michigan and California law regarding the enforceability of the non-solicitation and non-competition provisions of the Stryker Agreements.[4] Under Michigan law, the validity and enforceability of a non-competition agreement turns on its reasonableness. *See, e.g.*, *Huron Tech. Corp. v. Sparling*, No. 316133, 2014 WL 4495207, at *2 (Mich. Ct. App. Sept. 11, 2014) (citing Mich. Comp. Laws § 455.774a); *Landscape Forms, Inc. v. Quinlan*, No. 307116, 2012 WL 5290319, at *2 (Mich. Ct. App. Oct. 25, 2012) (citing Mich. Comp. Laws § 455.774a, and *Hubbard v. Miller*, 27 Mich. 15, 19 (1873)). In contrast, California law generally prohibits contractual provisions "by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind." Cal. Bus. & Prof. Code § 16600. This California rule is intended to protect an individual's right to engage in employment and businesses of their choosing. *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008) (citing *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 859 (1994) and *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1520 (1997)); *see also Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal. 4th 697, 706 (2002) ("California has a strong interest in protecting its employees from noncompetition agreements under section 16600.").

Moreover, there appears to be a trend among California courts of finding that § 16600 represents a fundamental public policy interest in California and that it should override contractual choice-of-law provisions at least with respect to such restrictive covenants. *See Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034, 1041 (N.D. Cal. 1990) (applying California law to

---

[4] The parties do not appear to dispute, however, that the non-disclosure provision of the Stryker Agreements is unenforceable under Michigan or California law.

the question of enforceability of covenants restricting competition in franchise agreements despite a choice-of-law provision electing Pennsylvania law as controlling interpretation of the agreements); *see also Gatsinaris v. ART Corp. Sols. Inc.*, No. SA CV 15-0741-DOC, 2015 WL 4208595, at *12 (C.D. Cal. July 10, 2015) (holding that "California public policy dictates that § 16600 applies" to a contract despite the presence of a Colorado choice-of-law provision); *Frame*, 20 Cal. App. 3d at 673 ("We conclude from the California Supreme Court's treatment of the problem that section 16600 does represent a 'strong public policy' of this state. Therefore the agreement for application of New York law must not be allowed to defeat that policy."). Persuaded by the above cited decisions, this court similarly concludes that Michigan law is contrary to a fundamental policy of California, with respect to covenants such as the non-solicitation and non-competition provisions of the Stryker Agreements, to the extent such provisions restrain an individual from pursuing employment or businesses of his choosing.

    2. <u>Whether California's Interests Are Materially Greater Than Those of Michigan and Would Be More Seriously Impaired If Its Laws Were Not Applied</u>

  The court next turns to the relative interests of the two states to determine whether California's interests are materially greater than those of Michigan, and whether California would be more seriously impaired if its laws were not applied. First, as both parties acknowledge, Michigan has a substantial interest in seeing its laws applied in this case. Plaintiff Stryker and its relevant affiliate companies are incorporated and based in Michigan, and both Stryker and Mr. Siroonian agreed to be bound by that state's laws in the Stryker Agreements. Moreover, Michigan has an interest in enforcing the contract rights of its citizens and ensuring uniform interpretation of similar agreements that companies like Stryker have with their employees.

  By contrast, however, California's interests appear materially greater than Michigan's in the context of this case. As the complaint alleges, nearly all the events giving rise to plaintiff's causes of action occurred in California, not Michigan. Mr. Siroonian was employed by and ostensibly resided in California during the entire time period relevant to this action. From the time he was hired by Stryker in 2012, Mr. Siroonian worked closely with several of Stryker's long-term customers in the Fresno Territory, and his alleged conspiracy with defendants centered

around the alleged solicitation and conversion of those same customers.  Moreover, Mr. Siroonian allegedly worked as an independent contractor with defendant Tragus, a California corporation, and interacted with Tragus and Biomet representatives who were focused specifically on sales in the California market.  In light of these facts, California would have a materially greater interest in ensuring that employees located in California are not restricted from freely pursuing their professions, and that California-based third parties such as Tragus are not deterred from freely competing with companies doing business in the state.  *See Application Grp.*, 61 Cal. App. 4th at 900 ("The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change.") (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 255 (1968)); *see also id.* at 901 (noting that § 16600 represents "a statement of California public policy which ensures that California employers will be able to compete effectively for the most talented, skilled employees in their industries, wherever they may reside.").  The court therefore concludes that in this case, California's interests are materially greater than those of Michigan and that California would be more seriously impaired if its laws were not applied.

        Accordingly, defendant's motion to dismiss is granted in part, and the Stryker Agreements' Michigan choice-of-law provision will be ignored with respect to the non-solicitation and non-competition provisions of those agreements, to the extent they govern Mr. Siroonian's post-employment conduct.  *See S. A. Empresa*, 641 F.2d at 749–50.  This does not mean, however, that plaintiff is completely barred from pursuing its causes of action for intentional interference with contract and unfair competition.  Plaintiff may still proceed with these causes of action insofar as they are based on alleged violations of the non-disclosure provision of the Stryker Agreements, or of the non-solicitation and non-competition provisions as a result of Mr. Siroonian's conduct while he was still employed by Stryker.

/////

/////

/////

# PLAINTIFF'S MOTION TO STAY PROCEEDINGS

Separately, plaintiff Stryker moves to stay this case pending the outcome of the *Siroonian* action in the Western District of Michigan, and relatedly, to continue defendants' motion to dismiss until resolution of its motion to stay.  (Doc. Nos. 33, 47.)

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Stone v. I.N.S.*, 514 U.S. 386, 411 (1995) ("[W]e have long recognized that courts have inherent power to stay proceedings.") (Breyer, J., dissenting) (citing *Landis*).  Deciding whether to grant a stay pending the outcome of other proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55.  The party seeking such a stay must "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else." *Id.* at 255.  In considering whether to grant a stay, this court must weigh several factors, including (1) "the possible damage which may result from the granting of a stay;" (2) "the hardship or inequity which a party may suffer in being required to go forward;" and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  A stay may be granted regardless of whether the separate proceedings are "judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

Plaintiff primarily argues that a stay is appropriate here because the parties in the *Siroonian* action have filed cross-motions for summary judgment on the question of whether the Stryker Agreements' Michigan's choice-of-law provisions are enforceable with respect to their non-solicitation and non-competition provisions. (Doc. No. 33-1 at 2, 6.)  Plaintiff thus argues that in the absence of a stay, there is a risk for inconsistent rulings regarding the enforceability of such a provision.  Plaintiff additionally posits that any decision on the enforceability issue in the

17

*Siroonian* action might have preclusive effect on issues before this court. (Doc. No. 46 at 2.)[5] Neither argument is persuasive. As set forth above, this court finds it appropriate to rule on the choice of law issue now, and any potential effect of the Michigan district court's future findings is speculative. Nevertheless, even if this court were to delay its ruling, preclusion is likely inapplicable to the issue now before it. The *Siroonian* court presumably will be applying the relevant Michigan conflict of law rules in determining the enforceability of the Stryker Agreements' choice-of-law provisions. Thus, the question of whether the Stryker Agreements are valid and enforceable under *Michigan* law is most certainly distinct from the same question when considered under *California* law. Despite potentially inconsistent rulings, this court is unconvinced that a decision by the Michigan district court would have significant effect on this court's reasoning herein.

More importantly however, the court finds no basis in the interest of judicial economy for a delay in these proceedings. The weight of the causes of action before this court concern the alleged actions of defendants Biomet and Tragus, not those of Mr. Siroonian. It is therefore unclear whether any issues outside of the choice of law question will be affected by the *Siroonian* action, such that discovery in this case should delayed. Plaintiff's motion to stay will therefore be denied.

**CONCLUSION**

For the reasons stated herein,

1. Defendant Tragus's motion to dismiss (Doc. No. 29) is granted in part;
2. Plaintiff Stryker's causes of action for intentional interference with contract and unfair competition are dismissed with respect to theories of liability based on Mr. Siroonian's

---

[5] Alternatively, plaintiff argues that a stay is appropriate based on the first-to-file rule. (See Doc. No. 33-1 at 3–4.) That rule, which allows a district court to stay proceedings if a similar case involving similar issues and parties was previously filed in another district court, is intended to give priority to the party who first establishes jurisdiction. *See Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015); *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993). Here, because the parties and issues are dissimilar, and because Stryker is the plaintiff in both cases, this court need not defer to the forum of the first-filed suit.

alleged breach of the non-solicitation and non-competition provisions of the Stryker Agreements, to the extent those provisions govern Mr. Siroonian's post-employment conduct;

3. Plaintiff's motion to stay proceedings (Doc. No. 33) is denied; and

4. Plaintiff's motion to continue the hearing on defendant Tragus's motion to dismiss (Doc. No. 47) is denied as having been rendered moot by this order.

IT IS SO ORDERED.

Dated: **January 31, 2017**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE